## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| MARQUS LEON BROWN, | ) | CASE NO. 5:14-CV-2288 |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| CHRISTOPHER LAROSE, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This 28 U.S.C. § 2254 petition is before the magistrate judge pursuant to Local Rule 72.2(b)(2).  Before the Court is the petition of Marqus Leon Brown ("Brown" or "Petitioner"), for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  Petitioner is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State of Ohio vs. Brown*, Case No. 2011-CR-1538 (Stark County Jan. 25, 2012).  (Doc. No. 5-1, Ex. 7.)  For the following reasons, the magistrate judge recommends that the petition be DISMISSED with prejudice.

## I.  Introduction

The state appellate court that affirmed Petitioner's conviction noted the following

facts:

> {¶ 2} This case arose on July 10, 2011, around 3:00 a.m. when S.H.
> awoke to find a strange man in her bedroom who subsequently raped her.
> S.H. was able to scream for help, attracting a neighbor's attention to call
> 911 and eventually calling 911 herself.

> {¶ 3} S.H., a 60–year–old woman at the time of these events, lived in a
> ground-floor apartment at London Square, a large apartment complex
> near the intersection of Whipple Avenue and Hills and Dales Road in
> Jackson Township, Stark County, Ohio. S.H.'s bedroom contained sliding
> glass doors which opened onto a partially-fenced patio area. For the
> previous six months, S.H.'s adult son A. had been living with her, but in
> early July A. began to move his things out of the apartment.

> {¶ 4} S.H. was friendly with an upstairs neighbor, Kay Foster, whose
> apartment was one floor up and over from hers.

> {¶ 5} The evening of July 9, 2011 began with S.H. and a friend going to a
> casino. Shortly after midnight, S.H. returned home, stopping at an ATM
> and at the Scheetz gas station near her apartment. To reach her
> apartment's parking spot from Scheetz, S.H. crossed the parking lot of the
> Acme Click supermarket adjacent to her apartment complex.

> {¶ 6} S.H. entered her apartment and locked her front door, although she
> testified she did not put the "safe lock" on the top of the door because she
> wasn't sure if A. would be coming back that night. S.H. turned on the air
> conditioning because it was a muggy evening and took several
> medications, including sleeping pills. She laid down in her bedroom and
> fell asleep.

> {¶ 7} S.H. was awakened around 3:00 a.m. by a strange feeling in her
> bed, as though the covers were being twisted. She sat up and was able to
> make out a man standing to the left of her bed. Assuming it was her son,
> A., she told him to take the air mattress into the living room. When the
> person did not move or respond, she realized it was not A. and was
> instead an intruder. S.H. began to scream and the man grabbed her and
> threw her down when she tried to get to her bedroom door. She tried to hit
> him, but testified that he was very strong and her efforts to fight him were
> easily deflected.

2

{¶ 8} The intruder proceeded to rape S.H. digitally, orally, and with his penis. S.H. continued screaming throughout. The intruder repeatedly said he had a gun and would kill her. S.H. later testified that his voice was very calm and he kept telling her to "shush."

{¶ 9} It was very dark in the room and S.H. did not have her contacts in, preventing her from getting a good look at the rapist. At one point she saw his hand against her own skin, and observed him to be dark-complexioned; she thought he was African–American. She also saw that he was wearing a dark baseball-style cap "with some white on it" and a round bill, which she knocked off during the struggle. Her fingers grazed his head and she described his hair as "not Caucasian," coarse and tightly curled. She had the impression he was tall and not young, closer to her sons' age (40).

{¶ 10} S.H. was never face-to-face with her attacker and did not notice any odor from him, such as alcohol or cigarettes.

{¶ 11} Eventually S.H. believed she briefly blacked out and awoke to find the man down beside her bed with a small flashlight, as though he was looking for something. S.H. believed he was about to kill her and covered her head with the blankets. It became quiet in the room and S.H. realized the intruder was gone, having left through the sliding glass doors.

{¶ 12} S.H. immediately called 911 and her son, A. Her neighbor, Kay Foster, had heard her screams and had also called 911. Jackson Township Police were soon on the scene and S.H. was transported to Aultman Hospital for a forensic rape exam.

{¶ 13} Police searched the area in and around S.H.'s apartment for evidence. An officer described S.H.'s rear patio area as very clean and well-kept, partially surrounded by a privacy fence. Along this fence he spotted a beer bottle which he photographed and collected. He believed the bottle to be fresh because it still contained liquid which had bubbles in it.

{¶ 14} The rape kit and beer bottle were submitted to the Stark County Crime Lab for DNA testing.

{¶ 15} S.H.'s son A. gave police their first lead. His mother had called him immediately after the assault, hysterical, stating that she had been raped. Later that night, she described the attacker as a fit, muscular, younger African–American male. A. was aware of someone fitting that description whom he had seen around the apartment complex, coming and going from the Acme Click supermarket. A. did not know the man's name or

3

where he lived, but had seen him in an Acme Click uniform and hat, working in the store near the apartments. A. told police about the individual.

{¶ 16} Det. Henderhan followed up on A's information and provided A's description to an Acme Click manager, who named appellant. Henderhan observed appellant working at Acme Click as a meat cutter, wearing a uniform which included a black baseball-style cap with white lettering. Appellant is age 35, 6'2 and weighs 230 pounds. He also lived in the London Square apartments, 388 feet from S.H.'s apartment. Henderhan made contact with appellant and his girlfriend on July 10 around 6:00 p.m. She didn't observe any scratches or injuries on appellant, and noticed his head was clean-shaven. He also had a small mustache. Appellant said he was in bed asleep with his girlfriend at 3:00 a.m. the night before. Henderhan obtained a search warrant for appellant's DNA and submitted it to the Stark County Crime Lab.

{¶ 17} Appellant's DNA matched the DNA found on the beer bottle and on swabs in the rape kit. Appellant is a "possible low-level contributor" to the mixture of DNA profiles obtained from S.H.'s fingernail swabs; is a "possible source" of DNA from the anal/perianal swabs; and is a "major source" of DNA from the mouth area of the beer bottle. Regarding the anal/perianal swabs the chance of selecting an unrelated individual at random with the same partial DNA profile is 1 in 5.882 billion.

{¶ 18} At trial appellant presented evidence that he worked at Acme Click from 6:00 a.m. until 2:30 p.m. on July 9 and from 9:30 a.m. until 6:00 p.m. on July 10. His supervisor testified that he has always known appellant to have a shaved head and small mustache. Appellant's girlfriend testified that he was with her in their apartment, asleep, when the rape of S.H. occurred.

*State v. Brown*, No. 2012CA00040, 2013-Ohio-2220, 2013 WL 2390254, at **1-3 (Ohio

Ct. App. May 28, 2013).

## II.  State-Court Proceedings

### A.  Indictment and Guilty Plea

In October 2011, the State issued an indictment charging Brown with one count

each of rape (Count One), aggravated burglary (Count Two), and kidnapping with a

4

sexual motivation specification (COUNT THREE).  (Doc. No. 5-1, Ex. 2.)  Brown entered

a plea of not guilty.  (*Id.*, Ex. 3.)

**B.      Conviction**

Prior to trial, Brown submitted a notice of alibi, stating that he was with Kathy

Martin at the time of the offenses.  (*Id.*, Ex. 4.)

Brown's jury trial was held in January 2012.  The jury found him guilty on all

counts.  (*Id.*, Ex. 5.)  The trial court found the kidnapping and rape charges were allied

offenses, and sentenced Brown to consecutive terms of ten years' imprisonment as to

the rape charge and an additional ten years' imprisonment as to the aggravated

burglary charge.  The court also classified Brown as a Tier III sex offender.  (*Id.*, Ex. 7.)

**C.      Direct Appeal**

Brown, through new counsel, filed a timely notice of appeal.  (*Id.*, Ex. 8.)  In his

appellate brief, he asserted the following assignments of error:

> 1.      The trial court's finding of guilty of rape, kidnaping and
>         aggravated burglary was against the manifest weight
>         of the evidence and was not supported by sufficient
>         evidence.
>
> 2.      The trial court erred in not ordering a mistrial following
>         improper closing argument by [the] prosecution.
>
> 3.      The trial court gave an erroneous jury instruction
>         thereby denying appellant a fair trial.

(*Id.*, Ex. 9.)

In May 2013, the state appellate court affirmed Brown's convictions and

sentences.  *Brown*, 2013 WL 2390254, at *7.  (Doc. No. 5-1, Ex. 11.)

Brown, *pro se*, filed a timely notice of appeal in the Ohio Supreme Court.  (*Id.*,

Ex. 13.)  In his memorandum in support of jurisdiction, Brown asserted the following

propositions of law:

> I. The trial court's finding of guilty of rape, kidnaping and aggravated burglary was against the manifest weight of the evidence and was not supported by sufficient evidence.
>
> II. The trial court erred in not ordering a mistrial following improper closing argument by [the] prosecution.
>
> III. The trial court gave an erroneous jury instruction thereby denying appellant a fair trial.

(*Id.*, Ex. 14.)  In October 2013, the Ohio Supreme Court declined jurisdiction and

dismissed the case.  (*Id.*, Ex. 16.)

**D. Application for Reopening Direct Appeal**

In August 2013, Brown filed a timely *pro se* application to reopen the direct

appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure.  (*Id.*, Ex. 17.)

He claimed his appellate counsel was ineffective for failing to raise the following

assignments of error on direct appeal:

> 1. The trial court erred to the prejudice of the Appellant in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 16 of the Ohio Constitution, when it failed to grant his Criminal Rule 29 motion for the prosecution's failure to sustain it's [*sic*] burden [of] proof.
>
> 2. Trial counsel was ineffective in it's [*sic*] failure to request DNA [t]esting of the DNA located under the fingernails of the victim, which would support his claim of actual innocence, in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 16 of [t]he Ohio Constitution.

6

3.      The jury lost its way and its verdicts were the product
        of coercion by the prosecution[.]

(*Id.* at 131, 133, 134.)  In November 2013, the state appellate court denied the

application.  (*Id.*, Ex. 19.)  Brown did not appeal this ruling to the Ohio Supreme Court.

**E.      State Post-Conviction Proceedings**

In December 2013, Brown, *pro se*, filed a motion to vacate his sentence and

conviction in the Stark County Court of Common Pleas.  (*Id.*, Ex. 20.)  In his motion, he

set forth the following claims:

1.      The trial court abused its discretion and violated
        defendant's due process when defendant was not
        sentence[d] according to House Bill 86 but instead
        sentence[d] under the old law after whose sentencing
        entry was filed after legislation's September 30, 2011
        effective date of House Bill 86, which resulted in plain
        error.

2.      The trial defense counsel provided constitutionally
        ineffective assistance by failing to object to
        defendant's sentencing under the old law which set
        forth plain error.

3.      "Mr. Brown you have been convicted of or plead [*sic*]
        guilty to a sexual oriented offenses as defined in Ohio
        Revised Code Section 2930.01.  And you are one of
        the following: And Tier III Sex Offender is checked."
        (T.p. 692)."

(*Id.* at 162, 164.)  The trial court denied the motion in December 2013.  (*Id.*, Ex. 21.)

Brown, *pro se*, filed a notice of appeal with the Fifth District Court of Appeals.

(*Id.*, Ex. 22.)  In his appellate brief, he raised the following assignments of error:

1.      The trial court abused its discretion and violated
        defendant's due process when defendant was not
        sentenced according to House Bill 86 but instead
        sentenced under the old law after whose sentencing
        entry was filed after legislation's September 30, 2011

7

> effective date of House Bill 86, which resulted in plain
> error.
>
> 2.      Trial defense counsel provided constitutionally
>         ineffective assistance by failing to object to
>         defendant's sentencing under the old law which set
>         forth plain error.
>
> 3.      Defendant's sentence was contrary to law due to
>         multiple errors at sentencing resulting in a deprivation
>         of due process and plain error.

(*Id.*, Ex. 23.)

In June 2014, the state appellate court, treating Brown's motion as a post-conviction petition, denied the motion as both untimely and barred by the doctrine of *res judicata.  State v. Brown*, No. 2014CA00005, 2014-Ohio-2988, 2014 WL 3030529 (Ohio Ct. App. June 30, 2014).  (Doc. No. 5-1, Ex. 26.)

Brown filed a *pro se* notice of appeal to the Ohio Supreme Court in August 2014. (*Id.*, Ex. 28.)  In his memorandum in support of jurisdiction, he set forth the following two assignments of error:

> I.      When a defendant is sentenced contrary to law due to
>         multiple errors at sentencing, does this result in a deprivation
>         of due process and double jeopardy in violation of the Ohio
>         and U.S. Constitutions?
>
> II.     When an appellant files a praecipe and docketing
>         statement to provide the reviewing court with a copy
>         of the transcript for the appeal, and the clerk fails to
>         do so, and the appellate court denies hearing the
>         issue for the appellant failing to file a transcript with
>         the court, does this violate due process for the
>         appellant in violation of the Ohio and U.S.
>         Constitutions?

(*Id.*, Ex. 29 at 238.)  The Ohio Supreme Court declined jurisdiction in December 2014. (*Id.*, Ex. 31.)

8

### III.  Proceedings in this Court

In October 2014, Petitioner, *pro se*, filed his § 2254 petition.  (Doc. No. 1.)  He asserted the following three grounds for relief:

> I.    There was insufficient evidence to sustain the convictions.
>
> Supporting Facts: The accused did not match the description of the assailant, (assailant said to have short curly hair), the accused is bald. The DNA evidence came from a beer bottle outside the residence in the same apartment complex where the accused lived. Semen found on the bedding was not the accused, and other DNA evidence was inconclusive.
>
> II.   Prejudicial prosecutorial misconduct prohibited the Defendant from receiving a fair trial in violation of the 5th, 6th, & 14th Amendments.
>
> Supporting Facts: Prejudicial [*sic*] The prosecutor, during closing arguments, told the jury that the Defendant must prove his alibi defense beyond a reasonable doubt. This incorrect statement of law prejudiced the substantial rights of the accused.
>
> III.  The trail [*sic*] courts [*sic*] improper jury instructions denied the Defendant a fair trial in violation of the 5th, 6th, & 14th Amendments.
>
> Supporting Facts: The state court instructed the facts upon which an expert witness's opinion was based need only to prove by a "greater weight of the evidence." This lowered the burden of proof to something less that [*sic*] beyond a reasonable doubt.

(*Id.* at 5, 7, 8.)

The State filed an Answer/Return of Writ.  (Doc. No. 5.)  After twice requesting and receiving additional time, Brown filed a Traverse, to which the State replied.  (Doc.

9

Nos. 11, 12.)

In April 2015, Brown filed a motion for leave to amend his petition to add two claims and a motion for evidentiary hearing.  (Doc. No. 13.)  The State responded.  It had no objection to Brown's request to amend his petition to add the two stated grounds, but opposed his request for an evidentiary hearing.  (Doc. No. 15.)  In June 2015, the Court granted Brown's motion for leave to amend only as to the claims identified in his motion, and denied his request for an evidentiary hearing on the ground that Brown had not met the required showing to receive such relief.  (Doc. No. 17.)

Brown filed his amended petition adding the following two grounds for relief:

IV.    When a defendant is sentenced contrary to law due to multiple errors at sentencing, does this result in a deprivation of due process and double jeopardy in violation of the Ohio and U.S. Constitutions?

V.    When an appellant files a praecipe and docketing statement to provide the reviewing court with a copy of the transcript for the appeal, and the clerk fails to do so, and the appellate court denies hearing the issue for the appellant failing to file a transcript with the court, does this violate due process for the appellant in violation of the Ohio and U.S. Constitutions?

(Doc. No. 18 at 2, 7.)

The State filed a "Supplemental" Answer/Return of Writ.  (Doc. No. 19.)  Brown then filed an Amended Traverse.  (Doc. No. 23.)

### IV.  Procedural and Related Issues

### A.    Jurisdiction

A state prisoner may file a § 2254 petition in "the district court for the district wherein such person is in custody or in the district court for the district within which the

State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d).  The

Court of Common Pleas of Stark County, Ohio sentenced Petitioner.  (Doc. No. 5-1, Ex.

7.)  Stark County is within this Court's geographic jurisdiction.  *See* 28 U.S.C. § 115(a).

Accordingly, this Court has jurisdiction over Petitioner's § 2254 petition.

**B.    Exhaustion and Procedural Default**

A state prisoner must exhaust all available state remedies or have no remaining

state remedies available prior to seeking review of a conviction via federal habeas

corpus.  *See* 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349

(1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991).  The exhaustion

requirement is properly satisfied when the highest court in the state in which petitioner

was convicted has been given a full and fair opportunity to rule on all the petitioner's

claims.  *See Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).  If any state

procedures for relief remain available, the petitioner has not exhausted his state

remedies, and, generally, a federal court must dismiss his petition.  *See Rust v. Zent*, 17

F.3d 155, 160 (6th Cir. 1994).  Where, however, there are no longer any state court

remedies still available to a petitioner with respect to a particular claim, this Court may

deem that claim procedurally defaulted.  *See Gray v. Netherland*, 518 U.S. 152, 161-62

(1996) ("Because the exhaustion requirement 'refers only to remedies still available at

the time of the federal petition,' *Engle v. Isaac*, 456 U.S. 107, 125, n.28 (1982), it is

satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred

under [state] law,' *Castille*[, 489 U.S. at 351].").

Generally, a federal court must decline to review  "contentions of federal law . . .

not resolved on the merits in the state proceeding due to respondent's failure to raise

them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If the State argues that a petitioner has procedurally defaulted a claim, the Court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

### 1.    Petitioner's Third Ground for Relief

In Brown's third ground for relief, he claims that the trial court violated his constitutional right to a fair trial by improperly instructing the jury on hypothetical

questions posed to experts.  (Doc. No. 11 at 27-29.)  The State argues that this claim is procedurally defaulted.  (Doc. No. 5 at 24-25.)

Brown raised this claim on direct appeal.  The state appellate court, the last court to address the claim, did not conduct a merits review of it, because Brown did not object to the challenged instruction at trial.  *Brown*, 2013 WL 2390254, at *6.  The court, nevertheless, proceeded to review the claim for plain error, finding none.  It reasoned:

> {¶ 42} As appellee points out, appellant has not argued, much less established, plain error; he points to no portion of the record which misleads the jury as to the burden of proof for each charged offense. The instruction does appear to be superfluous in that the record is devoid of any hypothetical question posed to appellee's experts. Moreover, appellant has not established that the outcome of the trial would have been different absent the instruction.

*Id.*

This claim is procedurally defaulted.  Ohio's contemporaneous objection rule requires that a party preserve an error for appeal by calling it to the attention of the trial court at a time when the error could have been avoided or corrected.  *State v. Glaros*, 170 Ohio St. 471 (Ohio 1960), paragraph one of the syllabus; *State v. Mason*, 82 Ohio St. 3d 144, 162 (Ohio 1998).  Failure to adhere to this "firmly-established" rule is "an independent and adequate state ground" upon which to find federal habeas claims procedurally defaulted.  *See, e.g., Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006).

In addition, because the state court clearly and expressly relied on a state procedural bar, these claims remain procedurally defaulted even though the court conducted an alternative merits analysis.  *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (State courts "[n]eed not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground

13

doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.")  *See also Scott v. Mitchell*, 209 F.3d 854, 865-66 (6th Cir. 2000) ("*Harris* does not preclude a finding that the state procedural rule was actually enforced where the state court decision also relies on an alternative ground."); *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998) ("Coe claims that the court of appeals's alternative holding—the he would lose on the merits anyway—means that he is not procedurally barred, because the state courts in fact reached the merits. This argument fails due to the Supreme Court's decision in *Harris* . . . .").

Finally, Brown does not offer any argument regarding either the cause for, or prejudice resulting from, his procedural default of this issue.[1]  Nor does he contend that he is actually innocent such that this Court should excuse his procedural default.  This claim, therefore, is procedurally defaulted.

### 2.    Petitioner's Fourth Ground for Relief

In his fourth ground for relief, Brown claims that "multiple errors" in his sentencing violated his constitutional rights to due process, to be free of double jeopardy, and to effective assistance of counsel.  First, he argues that the trial court, when faced with the decision of whether to sentence him under the Ohio sentencing guidelines in effect at

---

[1]  Brown does cite the Supreme Court decision in *Osborne v. Ohio*, 495 U.S. 103 (1990), for the proposition that he "has asserted a constitutional claim" and therefore "should not be precluded from having his issue heard" by this Court.  (Doc. No. 11 at 24.)  But *Osborne* does not help him.  In *Osborne*, the Court merely affirmed its authority to determine if an objection at trial was *sufficient* to preserve an issue for appeal; it did not excuse, or even address, a defendant's *failure* to object at trial.  *See Osborne*, 495 U.S. at 125.

14

the time of his offense rather than recently enacted guidelines, improperly determined that he would benefit more from being sentenced under the former guidelines.  Brown claims the new guidelines provide benefits that, while not guaranteed, "could" affect the length of his sentence, such as the increased ability to earn credits against his sentence.  (Doc. No. 23 at 3-5.)  Second, he asserts that his consecutive sentences for rape and aggravated burglary violated the Double Jeopardy Clause's ban on multiple punishments for the same offense.  At his sentencing hearing, the trial court and both parties agreed that Brown's kidnapping and rape offenses were allied offenses that should be merged for purposes of sentencing, but the defense never raised, and the trial court did not consider, the issue of whether the rape and aggravated burglary offenses should be merged.  (*Id.* at 5-10; *see* Doc. No. 6-6 at 8-11.)  Third, Brown argues his trial counsel was ineffective for failing to request the merger of his rape and aggravated burglary offenses.  (Doc. No. 23 at 6.)

The State correctly argues that these claims are procedurally defaulted.  (Doc. 19 at 5-7.)  Brown raised these claims in state post-conviction proceedings.  The last state court to address them, the state appellate court, found them procedurally barred on two independent grounds.  It first noted that Brown's petition was untimely.  Brown filed it 565 days after the date the trial transcript was filed with the appellate court, well beyond the 180 days permitted, and without satisfying the criteria for consideration of untimely petitions.  *Brown*, 2014 WL 3030529, at **4-5.

The appellate court further ruled that Brown's sentencing claims were barred by the doctrine of *res judicata*, since the claims were record-based and could have been raised on direct appeal, but were not.  *Id.* at *6.  Ohio's *res judicata* rule precludes a

15

defendant from raising for the first time in post-conviction proceedings a claim that was fully litigated or could have been fully litigated at trial or on direct appeal.  *State v. Perry*, 10 Ohio St. 2d 175, 180 (Ohio 1967).  The Sixth Circuit repeatedly has held that Ohio's *res judicata* doctrine is an adequate and independent state ground to procedurally bar claims asserted in federal habeas actions.  *See, e.g., Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000).

Moreover, Brown does not argue that these procedural bars should be excused based on a showing of cause and prejudice or actual innocence.  Brown's ground four also is procedurally defaulted.

### 3.        Petitioner's Fifth Ground for Relief

In his fifth ground for relief, Brown asserts that his due process rights were violated when the trial court's clerk of court and court reporter did not provide the appellate court with a transcript to support his sentencing claims, which caused the appellate court to deny a hearing on those claims.  (Doc. 23 at 11-12.)

The State argues that Brown procedurally defaulted this claim because he presented it only to the Ohio Supreme Court during post-conviction proceedings, not to the lower state courts.  (Doc. No. 19 at 7-9.)  A federal habeas claim is fully exhausted if the petitioner gave state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To provide state courts the necessary "opportunity," petitioners must "fairly present" federal constitutional claims "in each appropriate state court" before seeking relief in the federal courts.  *Baldwin v. Reese*,

16

541 U.S. 27, 29 (2004). Brown did not meet this requirement because he fairly presented this claim only to the Ohio Supreme Court in an attempt to obtain discretionary review. "A habeas petitioner's submission of a new claim to the state's highest court on discretionary review is not a fair presentation to the state's courts." *Hruby v. Wilson*, 494 Fed. Appx 514, 517 (6th Cir. 2012) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

This claim, therefore, is unexhausted and procedurally defaulted. *See Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) ("[I]f an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review."). Furthermore, as will be discussed below, the claim fails for the additional reason that it is not cognizable on federal habeas review. *See* 28 U.S.C. § 2254(b)(2) (courts may deny unexhausted habeas petitions on the merits).

## C. Cognizability

The State argues that Brown's third through fifth grounds for relief also are not cognizable on federal habeas review because they are based on errors of state law. (Doc. No. 5 at 25-26; Doc. No. 19 at 10-11, 17-18.) The Court agrees. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241). *See also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac,* 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process." (citation omitted)).

### 1.    Petitioner's Third Ground for Relief

As noted above, in ground three, Brown claims an allegedly improper jury instruction on hypothetical questions posed to experts violated his due process rights. Generally, however, errors in jury instructions do not rise to the level of federal constitutional violations.  Indeed, the "burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal."  *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). Federal habeas courts must determine "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process', not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'"  *Id.* (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).  *See also Bagby v. Sowders*, 894 F.2d 792, 795 (6th Cir. 1990) ("the circumstances that would induce a federal court to overturn the state court determination" regarding a requested jury instruction "would need to be extraordinary"); *Wood v. Marshall*, 790 F.2d 548, 551–52 (6th Cir. 1986) ("In a habeas proceeding, allegedly improper jury instructions must be shown to have infected the accused's trial to such a degree to constitute a clear violation of due process. The petitioner must show more than that the instructions are undesirable, erroneous or universally condemned.").

Here, the state appellate court found no plain error in the instruction Brown contests.  It explained:

> As appellee points out, appellant has not argued, much less established, plain error; he points to no portion of the record which misleads the jury as to the burden of proof for each charged offense. The instruction does

18

> appear to be superfluous in that the record is devoid of any hypothetical question posed to appellee's experts. Moreover, appellant has not established that the outcome of the trial would have been different absent the instruction.

*Brown*, 2013 WL 2390254, at *6.

Accordingly, Brown cannot show that there was an error of state law in admitting this evidence, much less an error so grievous that it undermined the fundamental fairness of his trial.  As the state court noted, the instruction was not even relevant to any issue in the case and therefore could not have prejudiced Brown in any respect.  In addition to being unexhausted and procedurally defaulted, it is not cognizable on federal habeas review.

### 2.    Petitioner's Fourth Ground for Relief

Brown's fourth ground for relief relates to his sentencing.  As with jury instructions, challenges to a state court's interpretation and application of state sentencing laws generally are not cognizable in federal habeas corpus.  *See, e.g., Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000); *Kipen v. Renico*, 65 Fed. Appx. 958, 959 (6th Cir. 2003).  A federal habeas court only considers an alleged state court sentencing error if it violates a petitioner's federal constitutional right to due process or equal protection.  *Allsup v. Sheldon*, 2013 WL 3200641, at *18 (N.D. Ohio June 24, 2013).

Brown devotes most of his argument to an analysis of Ohio sentencing laws as they apply to the trial court's decision.  As noted above, he complains that the trial court improperly applied Ohio's former sentencing guidelines to his convictions, and that his rape and aggravated burglary convictions constituted allied offenses of similar import

under Ohio law and therefore should have been merged for purposes of sentencing.  He also claims that his trial counsel was ineffective for failing to request the merger of those offenses.  Brown cites to only the broadest federal constitutional principles, without any substantive analysis, in support of these claims.

Accordingly, to the extent that Brown's fourth ground for relief asserts errors of state law by the Ohio trial court, those claims are not cognizable on federal habeas review. Moreover, because ground four also is procedurally defaulted, the court will not review the claim on the merits.[2]

### 3.  Petitioner's Fifth Ground for Relief

Brown's fifth ground for relief also is not cognizable in federal habeas.  As noted above, he asserts that his due process rights were violated during post-conviction

---

[2]  Even if this ground for relief were not procedurally defaulted, and to the extent that Brown alleges federal constitutional violations, it would fail.  First, Brown argues that the trial court's application of Ohio's older sentencing statute was contrary to due process and the Supreme Court's harmless-error analysis established in *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  (Doc. 23 at 4, 5.)  But Brown has not demonstrated any error in the court's sentencing beyond mere speculation that the new sentencing guidelines *might* result in a shorter sentence, much less an error that rises to the level of a due process violation.  Second, Brown contends that the trial court's imposition of consecutive sentences for his rape and aggravated burglary convictions violated his double jeopardy rights.  (*Id.* at 9.)  The sole question for federal habeas review of double jeopardy claims is whether the state legislature intended to authorize the cumulative punishments.  *See Ohio v. Johnson*, 467 U.S. 493, 499 n.8 (1984).  "[O]nce a state court has determined that the state legislature intended cumulative punishments, a federal habeas court must defer to that determination."  *Volpe v. Trim*, 708 F.3d 688, 697 (6th Cir. 2013) (quoting *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989)).  No state court has addressed Brown's double jeopardy claim.  Moreover, Brown has not shown that his consecutive sentences are impermissible under Ohio's allied offenses statute.  Finally, for these same reasons, Brown could not prevail on his ineffective-assistance claim based on his trial counsel's failure to request the merger of those offenses under *Strickland v. Washington*, 466 U.S. 668 (1984) (*see* Doc. No. 23 at 6), because he cannot demonstrate that he was prejudiced by his trial counsel's failure to request it.

proceedings when the trial court's clerk of court and court reporter did not provide the

appellate court with a transcript to support his sentencing claims, which he alleges

caused the appellate court to deny him a hearing on those claims.  (Doc. 23 at 11-12.)

The court stated:

> {¶ 40} Finally, appellant has not provided this Court with a transcript of the
> sentencing hearing. In *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197,
> 199, 400 N.E.2d 384 (1980), the Supreme Court of Ohio held the
> following: "[t]he duty to provide a transcript for appellate review falls upon
> the appellant. This is necessarily so because an appellant bears the
> burden of showing error by reference to matters in the record. *See State v.
> Skaggs*, 53 Ohio St.2d 162, 372 N.E.2d 1355 (1978). Without a transcript
> of the proceedings, appellant cannot demonstrate any error or irregularity
> in connection with the trial court's decision. *Knapp, supra.*

*Brown*, 2013 WL 2390254, at *6.

Brown primarily cites Ohio law supporting this claim.  To the extent that Brown

alleges errors of state law, this claim is not cognizable on federal habeas review.  As

this claim also is unexhausted and procedurally defaulted, the Court will not review it on

the merits.[3]

### V.  The Merits of Petitioner's Remaining Claims

The Antiterrorism and Effective Death Penalty Act of 1996 ( "AEDPA") altered the

---

[3]  Even if this ground were not unexhausted and procedurally defaulted, to the
extent that Brown alleges a constitutional violation, it would fail.  Brown cites *Griffin v.
Illinois*, 351 U.S. 12 (1956), and cases following it, for the proposition that the
Fourteenth Amendment's equal protection and due process guarantees dictate that
state courts must provide a free trial transcript to indigent defendants for purposes of
appeal.  *Id.* at 18-19.  As the State correctly argues, however, the trial transcript would
not have changed the result of Brown's post-conviction proceedings, since his petition
was dismissed on timeliness and *res judicata* grounds.  Any error the state court
committed with regard to the transcript, therefore, was harmless.  *See Brecht v.
Abrahamson*, 507 U.S. 619, 623 (1993) (harmless error review examines whether the
constitutional violation "had a substantial and injurious effect or influence in determining
the jury's verdict.").

standard of review that a federal court must apply when deciding whether to grant a writ

of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless
> the adjudication of the claim resulted in a decision that was
> contrary to, or involved an unreasonable application of,
> clearly established Federal law, as determined by the
> Supreme Court of the United States; or resulted in a decision
> that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court
> proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly

established federal law or was based on an unreasonable determination of the facts in

light of the evidence.  *See Carey v. Musladin*, 549 U.S. 70 (2006); *Williams v. Taylor*,

529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the

Supreme Court, not its dicta, and the law must be clearly established at the time of the

petitioner's conviction.  *See Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and

"unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which
> a state prisoner may obtain federal habeas relief with
> respect to a claim adjudicated on the merits in state court.
> Under the statute, a federal court may grant a writ of habeas
> corpus if the relevant state-court decision was either (1)
> "*contrary to* . . . clearly established Federal law, as
> determined by the Supreme Court of the United States," or
> (2) "*involved an unreasonable application of* . . . clearly
> established Federal law, as determined by the Supreme
> Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is

"contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.   A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been objectively unreasonable."  *Id.* at 520-21 (internal citations and quotation marks omitted).  This Court applies this deferential standard of review to the state courts' rulings on Brown's first and second grounds for relief.

## A.  Petitioner's First Ground for Relief:  *Sufficiency of the Evidence*

Brown argues in his first ground for relief that his convictions were not supported by sufficient evidence.  He "vehemently denies that he was the perpetrator of the offenses," claiming the only evidence linking him to the crimes was the "questionable" DNA evidence.   (Doc. No. 11 at 9-10.)  The State argues that this claim lacks merit. (Doc. No. 5 at 14-19.)

The Due Process Clause of the Fourteenth Amendment requires a state to prove every element of a crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979).  A habeas court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319

23

(emphasis in original). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993).

Because both *Jackson* and the AEDPA apply to Brown's sufficiency claim, this Court's review requires deference at two levels. "'First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by [the] AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). The Sixth Circuit has observed that "'[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Id.* at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Brown presented this claim on direct appeal. The state appellate court, the last state court to address the claim, rejected it. After explaining the standards for sufficiency claims, the court reasoned:

> {¶ 28} Appellant was convicted of one count of rape pursuant to R.C. 2907.02(A)(2), which states, "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." He was also convicted of one count of aggravated burglary pursuant to R.C. 2911.11(A)(1), which states, "No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the * * * any criminal offense, if any of the following apply: [t]he offender inflicts, or attempts or threatens to inflict physical harm on another." Finally, appellant was convicted of one count of kidnapping pursuant to R.C. 2905.01(A)(4), which states, "No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

24

[t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will." Appellant challenges the element of his identification as the rapist who assaulted S.H. in her home on July 10, 2010.

{¶ 29} First, appellant takes issue with the quality of S.H.'s description of her attacker and the thoroughness of the police investigation. It is well-established, however, that the weight of the evidence and the credibility of the witnesses are determined by the trier of fact. . . .

{¶ 30} The deficiencies in appellee's evidence pointed to by appellant do not overcome the substantial credible evidence in support of his conviction. The DNA evidence developed from the mouth of the beer bottle definitively placed appellant at the scene; the chance of selecting an unrelated individual at random with the same profile would be 1 in 204.7 quadrillion. The anal/perianal swab from the rape kit tested positive for the presence of semen, and the DNA profile from the semen was also linked definitively to appellant, even though statistically the terminology indicates appellant is a "possible contributor." Despite the qualified statistical terminology, the evidence of appellant's guilt is substantial.

{¶ 31} Stepping back from the DNA evidence, it is impossible for us to overlook the strong circumstantial evidence that appellant matched the description S.H. provided, with the exception of the hair she thought she felt. Appellant lived and worked in the same "neighborhood" as the victim, matched the physical description she gave, and wore a uniform cap similar to the one she described.

{¶ 32} We find appellant's convictions for rape, aggravated burglary, and kidnapping are supported by sufficient evidence . . . .

*Brown*, 2013 WL 2390254, at *4.

Brown argues that the state appellate court's decision is an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2).  (Doc. No.  11 at 8-9.)  The Supreme Court, however, recently treated a habeas sufficiency claim as a mixed question of law and fact, reviewable under AEDPA's "unreasonable application" standard of § 2254(d)(1).  *McDaniel v. Brown*, 558 U.S. 120, 131-33 (2010).

Brown contests the state court's conclusion in several respects.  His chief complaint is that the court misinterpreted, and should not have relied upon, the DNA evidence.  He first claims the State's scientific experts contradicted one another, suggesting the evidence was contaminated and casting doubt on the testing's reliability.  (Doc. No. 11 at 10-12.)  He argues that the manager of the Canton Stark County Crime Laboratory testified that she did not detect certain agents found in semen in the crime scene samples, while the lab's forensic scientist testified that the DNA results from some samples indicated the presence of seminal fluid.  The lab manager testified, however, that the results regarding semen were "inconclusive."  (Doc. No. 6-4 at 240.) And nothing in the record indicates that the results of the different tests conducted by the two experts necessarily were incompatible; it is reasonable to presume that different tests generate different results.

Brown also contends that the appellate court had "an obvious misunderstanding or intentional disregard" for the DNA expert's testimony regarding the statistical probability that Brown was a source of the biological evidence.  (Doc. No. 11 at 12-16.) The record, however, fully supports the state court's summary of the DNA evidence. (*See* Doc. No. 6-4 at 272-73.)  Brown further argues that the DNA evidence in certain samples was "inadequate to determine a complete profile."  (Doc. No. 11 at 16.)  But the DNA expert testified with regard to those samples that she had "sufficient DNA to move forward with [her] testing."  (Doc. No. 6-4 at 267.)  Brown also complained that the hair samples were not tested.  (Doc. No. 11 at 10.)  The expert testified, however, that she did not test the hair samples because she had other biological evidence to test that would produce more reliable results.  (Doc. No. 6-4 at 241.)

26

Finally, Brown claims that the expert's determination that he was not the source of semen samples from the victim's bedspread exonerated him.  He argues that the samples must have come from the attacker because the victim testified that she had not had sexual interactions in the past year, and as a "neat" person, she would have washed the bedspread after that time.  (Doc. No. 11 at 18-19.)  This argument, however, is speculative.

Brown points to several other weaknesses in the State's case against him, including:  the victim's description of her attacker did not match Brown, especially concerning his hair type; the victim's description was also too vague, since she could not see well in the dark and without her contact lenses; the victim's credibility was undermined by the fact that she took medications that treat depression, anxiety and sleeplessness; the victim testified that she fought her attacker, but Brown had no injuries; he had a valid alibi; the evidence against him, such as the fact he regularly walked by the victim's apartment on his way to work, was circumstantial; the victim testified that her attacker said his name was "James" and her apartment was previously leased by a man named James; and the police failed to investigate other suspects in the case.  (*Id.* at 19-25.)

Nonetheless, Brown has not overcome the "nearly insurmountable hurdle" to prevail on this claim.  *Davis*, 658 F.3d at 534.  Brown's arguments are defenses that go to the issue of credibility, not sufficiency of the evidence.  After viewing the evidence in the light most favorable to the prosecution, the Court finds Brown has not demonstrated that *no* rational trier of fact could have found the essential elements of the crimes for which he was convicted beyond a reasonable doubt.  *Jackson,* 443 U.S. at 319.  The

Court agrees with the state court that the evidence against Brown was "substantial." The state court provided a detailed account and well-reasoned analysis of the evidence presented to support Brown's convictions

Accordingly, the state appellate court's conclusion that the jury "made a rational decision to convict" based on sufficient evidence was reasonable.  *Herrera*, 506 U.S. at 402.  Its decision was neither contrary to, nor an unreasonable application of, *Jackson* and its progeny.

## B.    Petitioner's Second Ground for Relief:  *Prosecutorial Misconduct*

For his second ground for relief, Brown claims that the State violated his due process right to a fair trial when the prosecutor misstated the law regarding alibis during his closing argument.  (Doc. No. 11 at 25-27.)  The State argues that this claim lacks merit.  (Doc. No. 5 at 19-24.)

The Supreme Court set forth the standard for claims of prosecutorial misconduct in habeas proceedings in *Darden v. Wainwright*, 477 U.S. 168 (1986).  It held that to prevail on such claims, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned."  *Id*. at 181 (internal quotation marks and citation omitted).  Rather, "'[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Id*. (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)).  *See also United States v. Young*, 470 U.S. 1, 11 (1985) ("Nevertheless, a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.").

28

The *Darden* standard "is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations . . . .'"  *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (quoting *Yarlborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Courts may consider:  (1) whether the evidence against the defendant was strong; (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally.  *Wogenstahl v. Mitchell*, 668 F.3d 307, 328 (6th Cir. 2012).

"The prosecution necessarily has 'wide latitude' during closing argument to respond to the defense's strategies, evidence and arguments."  *Id.* at 329 (quoting *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009)).  Moreover, if the trial court instructs the jury to disregard a prosecutor's comment, the jury is presumed to have followed that instruction.  *See, e.g., United States v. Olano*, 507 U.S. 725, 740 (1993).

Brown raised this claim on direct appeal.  The last state court to address it, the state appellate court, opined:

> {¶ 36} In the instant case, during rebuttal argument the prosecutor stated: " * * * Now, they have brought into play what [appellant] was doing and where he was. Now he has something to prove. He has said I have an alibi, I wasn't there. He needs to prove it. He needs to prove it beyond a reasonable doubt and he brought in—" Defense trial counsel immediately objected, the trial court sustained the objection, and gave a limiting instruction per counsel's request. The trial court instructed the jury that the prosecutor's statement was not a correct statement of the law and instructed the panel to disregard the statement. In final jury instructions, the trial court again properly instructed the jury on alibi.

> {¶ 37} Upon reviewing the prosecutor's remark in the context of the entire trial, we do not find it prejudicially affected the substantial rights of appellant. The jury is presumed to follow the instructions of the trial court. Appellant has not pointed to any evidence in the record that the jury failed

to do so in this case. The comment was an isolated incident in an otherwise proper argument, in a presentation of overwhelming evidence against appellant, as discussed supra.

{¶ 38} Appellant cannot establish that but for the prosecutor's incorrect statement of the law, the outcome of his trial would have been different.

*Brown*, 2013 WL 2390254, at *5-6 (internal citations omitted).

Brown cannot show that the state appellate court's decision was contrary to, or an unreasonable application of, *Darden*.  As the state court explained, defense counsel immediately objected to the challenged comment, which the trial court sustained.  The court then gave the jury a limiting instruction.  It also instructed the jury on alibi in the final jury instructions.  The comment, therefore, was isolated and did not mislead the jury, and the jury is presumed to have followed the court's instruction to disregard it. Moreover, as explained above, the evidence against Brown was substantial.

Brown argues that the trial court's remedial instruction "was not consistent with federal law" and "created more confusion."  (Doc. No. 11 at 26.)  This argument is misplaced.  The instruction concerned state law.  The state appellate court found the trial court "properly instructed the jury on alibi,' and this court must defer to that court's determination of Ohio law.

Thus, in the context of the entire trial, Brown has failed to demonstrate that the prosecutor's alleged misconduct was "so pronounced and persistent that it permeate[d] the entire atmosphere of the trial."  *See Wogenstahl*, 668 F.3d at 335.  The state court's decision, therefore, did not contravene or misapply *Darden.*

## VI. Conclusion.

For the reasons given above, the petition should be dismissed with prejudice.

30

Date:  March 22, 2016                          /s/ *Nancy A. Vecchiarelli*
                                               United States Magistrate Judge


## **OBJECTIONS**

      **Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**